<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JAMAL SAHLER,<br><br>          Plaintiff,<br><br>          v.<br><br>HEALTHY CHOICE MARKETS IV, LLC, *et al.*,<br><br>          Defendants. | Civil Action No. 25-18798 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Defendants Healthy Choice Markets IV, LLC ("Healthy Choice"), Heather Creighton ("Creighton"), Matthew Porricelli ("Porricelli"), Chris Valenti ("Valenti"), and Emily Stephan's ("Stephan") (collectively, "Defendants") Motion to: (1) Compel Arbitration of Plaintiff Jamal Sahler's ("Plaintiff") Claims; and (2) Stay the Proceedings. (ECF No. 7.) Plaintiff opposed (ECF No. 12), and Defendants replied (ECF No. 13). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendants' motion is granted.

**I.     BACKGROUND**

In this action, Plaintiff alleges that his employment with Healthy Choice was wrongfully terminated in retaliation for reporting Healthy Choice's "unsanitary, hazardous, and potentially illegal practices." (*See generally* Ex. A to Defs.' Not. of Removal ("Compl."), ECF No. 1.) Plaintiff commenced his employment with Healthy Choice on February 1, 2021, and served as the Director of Operations. (Compl. ¶¶ 8, 10.) In this role, Plaintiff investigated store conditions and reported

his findings to Creighton. (*Id.* ¶ 12.) In November 2023, Plaintiff informed Creighton that he found mold in a Healthy Choice store based in Mount Kisco, New York, and proposed to remedy the infestation. (*Id.* ¶ 13.) Plaintiff alleges that Creighton dismissed Plaintiff's proposal due to budgetary restrictions and preferred Healthy Choice to hire a contractor to "wipe down the mold and paint over it." (*Id.* ¶ 14.) One month after making this report, Creighton informed Plaintiff that he would be removed from his position as Director of Operations due to corporate restructuring. (*Id.* ¶ 16.) Plaintiff was therefore demoted to Food Service Director, and his salary was cut by forty-five percent. (*Id.* ¶¶ 17-18.) In April 2024, Plaintiff injured his lower back while fixing a doorframe at Healthy Choice's Basking Ridge location. (*Id.* ¶ 23.) Plaintiff subsequently submitted a Workers' Compensation claim, highlighting Healthy Choice's health and safety violations. (*Id.* ¶¶ 24-25.) On January 13, 2024, Valenti and Stephan informed Plaintiff that his employment with Healthy Choice was terminated. (*Id.* ¶¶ 27-29.)

Based on these facts, Plaintiff filed a Complaint in the Superior Court of New Jersey, Somerset County, on November 24, 2025. (Defs.' Not. of Removal ¶ 1.) Plaintiff's Complaint asserts claims under New Jersey's Conscientious Employee Protection Act, N.J. Stat. Ann. § 34:19-1, *et seq.*, and the common law for: (1) retaliatory termination; (2) unlawful retaliation; and (3) wrongful discharge. (Compl. ¶¶ 31-45.) Defendants subsequently removed this action pursuant to 28 U.S.C. § 1332(a)(1) on December 19, 2025. (Defs.' Not. of Removal ¶¶ 9-18.)

In lieu of filing an answer, Defendants moved to compel arbitration of Plaintiff's claims on January 16, 2026. (Defs.' Mot., ECF No. 7.) Defendants assert that Plaintiff signed the "Paychex New Employee Packet" containing a Dispute Resolution Agreement (the "DRA") as part of his

onboarding with Healthy Choice in November 2022.[1] (Defs.' Moving Br. 3-7, ECF No. 7-1.) The

DRA reads, in relevant part,

> You, Paychex, and the Worksite Employer [as defined as the company for which you perform services] agree:
>
> . . .
>
> This Agreement governs legal disputes between you and any Paychex- affiliated company . . . or the business or organization you perform work for (your "Worksite Employer," which is an intended beneficiary of this Agreement) arising out of or in connection with your employment, application for employment, or separation from employment for which you are, were, or would be paid through Paychex.
>
> . . .
>
> To the greatest extent allowed by law, except as otherwise provided below, **ANY DISPUTE BETWEEN YOU AND PAYCHEX OR YOUR WORKSITE EMPLOYER WILL BE RESOLVED EXCLUSIVELY THROUGH BINDING ARBITRATION.**
>
> . . .
>
> The arbitrator will[ h]ave the authority to determine whether a dispute is subject to this agreement to arbitrate (unless applicable law provides that a court make that determination). . . .
>
> If a legal dispute involves owners, directors, officers, managers, employees, benefit plan administrators, or insurers of Paychex or your Worksite Employer, or anyone alleged to be joint employers with Paychex or your Worksite Employer (all of which are intended beneficiaries of this Agreement), that dispute also will be governed by this Agreement including its arbitration, jury trial waiver, and class/representative/collective action waiver provisions. . . .

---

[1] Paychex and Healthy Choice are "co-employers" wherein Paychex, acting as a "Professional Employer Organization", provides payroll and onboarding services for Healthy Choice, the "Worksite Employer." (*See* Defs.' Moving Br. 3; Stephan Decl. ¶2, ECF No. 7-3.) Healthy Choice informs employees at the outset of their employment of its relationship with Paychex. (Defs.' Moving Br. 3; Stephan Decl. ¶2.)

3

(Ex. A to Stephan Decl. 2-4, ECF No. 7-3 (emphasis in original).) Plaintiff opposed Defendants' Motion (Pl.'s Opp'n Br., ECF No. 12), and Defendants filed a reply (Defs.' Reply Br., ECF No. 13).

## II.    <u>LEGAL STANDARD</u>

"It is well established that the Federal Arbitration Act (FAA), reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "The strong federal policy favoring arbitration, however, does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* (citations omitted). When deciding a motion to compel arbitration, a court must first determine the applicable standard of review. The Third Circuit has instructed that:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6)[2] standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

---

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

*Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks and citation omitted) (first and third alterations in original).

"Section 3 of the FAA specifies that, when a dispute is subject to arbitration, the court 'shall on application of one of the parties stay the trial of the action until [the] arbitration' has concluded." *Smith v. Spizzirri*, 601 U.S. 472, 473-74 (2024) (quoting 9 U.S.C. § 3) (alteration in original). Even in instances where the parties move to dismiss, or in the alternative to stay, the case must be stayed. *Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 245 (3d Cir. 2025) (citing *Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 453 (6th Cir. 2021)); *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 711 (9th Cir. 2024).

## III.    DISCUSSION

Defendants argue that arbitration should be compelled for the following reasons: (1) the DRA is a valid arbitration agreement under traditional contract principles; (2) the claims in Plaintiff's complaint are within the DRA's scope; and (3) Defendants are intended third-party beneficiaries to the DRA and can enforce its arbitration provision. (*See generally* Defs.' Moving Br.) In response, Plaintiff contends that: (1) Defendants are incidental beneficiaries of the DRA and, therefore, cannot compel arbitration as non-signatories; and (2) the scope of the DRA covers only payment disputes between Plaintiff and Paychex. (Pl.'s Opp'n Br. 6-9.)

The Court begins its analysis by determining whether the Rule 12(b)(6) or the Rule 56 standard governs the dispute. *See Guidotti*, 716 F.3d at 776. The Court will then address the parties' arguments in turn. For the reasons that follow, the Court will compel arbitration and stay this matter.

### A.    The summary judgment standard governs this dispute.

There are "two distinct paths for district courts to follow" on the issue of arbitrability: (1) "when it is apparent, based on the face of a complaint, and [the] documents relied upon in the

complaint, that . . . a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery"; or (2) "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded . . . with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319 (3d Cir. 2024) (quoting *Guidotti*, 716 F.3d at 776). In other words, under the second path, the summary judgment standard will apply "if a complaint does not set forth clearly that the claims are subject to an arbitration agreement, or if the plaintiff rebuts the motion to compel 'with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement[.]'" *Id.* (quoting *Guidotti*, 716 F.3d at 776). When applying the summary judgment standard, "[i]n the absence of a factual dispute, there is nothing to discover and thus no need to delay a decision on the motion to compel." *Id.* at 319-20.

Here, the Court applies the summary judgment standard because: (1) Plaintiff's Complaint made no reference to the DRA; (2) Plaintiff did not attach the DRA to the Complaint; and (3) Plaintiff did not base his claims on the existence of the DRA. (*See generally* Compl.); *see Young*, 119 F.4th at 319 (noting the district court correctly determined that the Rule 56 standard governed under similar circumstances). The Court's inquiry as to the arbitrability of Plaintiff's claims here is, accordingly, guided by whether any disputes of material facts exist as to the existence and scope of the DRA.

### B.    The DRA is valid and enforceable.

To determine whether there is an agreement to arbitrate, courts "turn to 'ordinary state-law principles that govern the formation of contracts.'" *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Under New Jersey law, "[a]n enforceable

agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms." *Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (N.J. 2016) (citing *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 306 (N.J. 2014)). The arbitration clause "must be clear and unambiguous—that is, the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum." *Atalese*, 99 A.3d at 315.

Here, there is no genuine dispute that the DRA exists, and it is a valid agreement to arbitrate. Plaintiff's electronic signature is affixed to the bottom of the DRA, demonstrating his assent to be bound by its terms. (Ex. A to Stephan Decl. 4.) Plaintiff, moreover, does not suggest that the DRA was procured by fraud. (*See generally* Pl.'s Opp'n Br.); *GAR Disability Advocs., LLC v. Taylor*, 365 F. Supp. 3d 522, 527 (D.N.J. 2019) ("When a party enters into a signed, written contract, that party is presumed to understand and assent to its terms, unless fraudulent conduct is suspected." (citing *Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 690 (N.J. 2010))). Additionally, the terms of the DRA are clear and unambiguous because: (1) the "Mandatory Arbitration" section is bold and capitalized; (2) the language warns the reader that the DRA governs legal disputes between Plaintiff, Paychex, and the Worksite Employer, and any dispute will be resolved exclusively through binding arbitration; (3) the language of the DRA clearly articulates the arbitration process and confirms that the reader is not giving up his or her rights to seek legal relief, stating that the reader will receive a neutral arbitrator and is entitled to legal representation; and (4) the terms of the DRA notify the reader which disputes are subject to arbitration and which are exempt. (*See* Ex. A to Stephan Decl. 2-4.) Having determined that the DRA is valid and enforceable, the Court turns to whether Defendants are intended third-party beneficiaries.

### C.    Defendants are intended third-party beneficiaries.

"Nonsignatories of a contract . . . may compel arbitration or be subject to arbitration if the nonparty is . . . a third[-]party beneficiary to the contract." *Mut. Benefit Life Ins. Co. v. Zimmerman*,

783 F. Supp. 853, 865 (D.N.J. 1992). Third-party beneficiary status "focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement." *Ross v. Lowitz*, 120 A.3d 178, 189-90 (N.J. 2015) (quoting *Broadway Maint. Corp. v. Rutgers, State Univ.*, 447 A.2d 906, 909 (N.J. 1982)). "[T]he intention of contracting parties to benefit an unnamed third party must be garnered from an examination of the contract and a consideration of the circumstances attendant to its execution." *Reider Cmtys., Inc. v. Twp. of N. Brunswick*, 546 A.2d 563, 566 (N.J. Super. Ct. App. Div. 1988).

Although Defendants are not explicitly named in the DRA, Healthy Choice qualifies as the "Worksite Employer" and Creighton, Porricelli, Valenti, and Stephan qualify as "owners, directors, officers, managers, employees, benefit plan administrators, or insurers of . . . [the] Worksite Employer." (*See* Ex. A to Stephan Decl. 2, 4.) Here, in the section titled "Are there any other people covered by this Agreement?", the DRA explicitly states that the Workplace Employer, and its owners, directors, officers, managers, employees, benefit plan administrators, or insurers, are intended beneficiaries of the DRA in the event of a legal dispute, and such dispute is governed by the DRA, "including its arbitration, jury waiver, and class/representative/collective action waiver provisions." (*Id.* at 4.) By the express terms of the DRA, there is, accordingly, no genuine dispute that Defendants are intended third-party beneficiaries to the DRA and can enforce its arbitration provision. The Court next turns to the scope of the DRA.

**D.     The delegation clause precludes the Court from considering whether the claims asserted herein are within the scope of the arbitration agreement.**

Here, the parties dispute the intended scope of the arbitration agreement. Defendants contend that the scope of the DRA is extremely broad, subsuming any legal "dispute between [Plaintiff] and Paychex or [Plaintiff's] worksite employer [(Healthy Choice)]" that arises out of or

in connection with Plaintiff's employment, application for employment, or separation from employment. (Defs.' Moving Br. 14.) On the other hand, Plaintiff argues that the DRA covers only payment disputes. (Pl.'s Opp'n Br. 6-7.) Notwithstanding the parties' dispute over the scope of the DRA, the Court has no power to decide this issue for one reason: the DRA contains a delegation clause. It states that the arbitrator has "the authority to determine whether a dispute is subject to this agreement to arbitrate (unless applicable law provides that a court make that determination)[.]" (Ex. A to Stephan Decl. 3.)

Where, such as here, "an arbitration provision, by 'clear and unmistakable evidence,' contains a valid delegation clause, the court's inquiry is limited to . . . [only] determining whether a valid agreement to arbitrate exists." *Coulter v. Experian Info. Sols., Inc.*, No. 20-1814, 2021 WL 735726, at *4 (E.D. Pa. Feb. 25, 2021) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019)). "If a valid agreement exists, [therefore,] and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc.*, 586 U.S. at 69. "[A] party seeking to avoid arbitration must *directly* challenge the arbitration or delegation clause, not just the contract as a whole." *Young*, 119 F.4th at 321 (emphasis added) (citation omitted).

Neither party disputes the validity of the delegation clause. As such, the Court must treat it as valid. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010) (explaining that unless a party challenges a "delegation provision specifically, [the Court] must treat it as valid under [Section] 2 [of the FAA], and must enforce it under [Sections] 3 and 4, leaving any challenge to the validity of the [a]greement . . . for the arbitrator."); *accord MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 399 (3d Cir. 2020) (same). Because there is no

genuine dispute as to the DRA's formation, and Plaintiff presents no challenge to the delegation clause specifically, the parties must submit to arbitration.

### E.    The Court will stay this matter.

"When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, [Section] 3 of the FAA compels the court to stay the proceeding." *Smith*, 601 U.S. at 478. Here, Defendants request a stay of these proceedings. (*See* Defs.' Moving Br. 19.) The Court, accordingly, stays this matter pending arbitration.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court grants Defendants' motion. The Court will issue an order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: June 8, 2026